**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**
_____

ELIZABETH A. o/b/o
A.C.P., III,[1]

                    Plaintiff,

          v.                                    **DECISION AND ORDER**
                                                    20-CV-128-A

ANDREW SAUL,[2]
Acting Commissioner of Social Security,

                    Defendant.
_____

          Plaintiff Elizabeth A. ("Plaintiff"), brings this action on behalf of her deceased

brother, A.C.P, III ("the Claimant"), seeking review of the Commissioner of Social

Security's final decision that denied the application filed by Claimant and Plaintiff for

Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("SSA").

The Court has jurisdiction pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

The parties have filed cross-motions for judgment on the pleadings pursuant to Rule

12(c) of the Federal Rules of Civil Procedure (Dkt. Nos. 8-9, 10), and Plaintiff filed a

reply (Dkt. No. 11).

          The Court assumes the parties' familiarity with the administrative record, the

parties' arguments, and the standard of review, to which the Court refers only as

_____

[1] To protect the personal and medical information of non-governmental parties, this Decision and Order will identify the plaintiff and the claimant using only their first names and last initials, in accordance with this Court's Standing Order issued November 18, 2020.

[2] Andrew Saul is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew Saul is substituted for Acting Commissioner Nancy A. Berryhill as the defendant in this suit.

necessary to explain its decision.  *See Schaal v. Apfel*, 134 F.3d 496, 500-501 (2d Cir. 1998) (summarizing the standard of review and the five-step sequential evaluation process that Administrative Law Judges [ALJs] are required to use in making disability determinations); *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (same).  For the reasons stated below, Plaintiff's motion is GRANTED, the Commissioner's motion is DENIED, and the Commissioner's final decision is VACATED and the case REMANDED for further administrative proceedings consistent with this Decision and Order.

**PROCEDURAL HISTORY**

In September 2016, Claimant applied for DIB.  T. 121-122.[3]  He alleged disability beginning July 11, 2003 due to degeneration of his lower back at L4-L5 and a fracture at L-4; arthritis in his back, hands, and hips; diabetes; high blood pressure; and high cholesterol.  T. 121, 153.  It is undisputed that Claimant's date last insured was June 30, 2012.  *See* T. 10, 12.

After Claimant's application was denied, on January 11, 2017 he requested a hearing.  T. 43-49, 56-57.  Claimant died on September 14, 2017 before a hearing was held.  T. 439.  His death certificate lists atherosclerotic cardiovascular disease as the immediate cause of death, with uncontrolled diabetes and hypertension listed as other causes.  T. 439.  Plaintiff, who is Claimant's sister and the executrix of his estate, was designated a substitute party for Claimant's DIB application.  T. 112, 152, 440.

The administrative hearing took place on August 21, 2018.  At the hearing, Claimant's estate's representative amended his alleged disability onset date to January

---

[3] "T. __" refers to pages of the administrative transcript.

21, 2009[4], T. 10, 32, and a vocational expert ("VE") appeared and testified, T. 28-42.

After the hearing, the ALJ issued a decision finding that Claimant was not disabled

within the meaning of the Social Security Act.  T. 10-16.  On December 2, 2019, the

Appeals Council denied Plaintiff's request for review.  T. 1-3, 119; *see* T. 119-120, 191-

192.  This action seeks review of the Commissioner's final decision.  Dkt. No. 1.

## DISCUSSION

"In reviewing a final decision of the SSA, this Court is limited to determining

whether the SSA's conclusions were supported by substantial evidence in the record

and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d

Cir. 2012) (internal citations and quotations omitted); *see* 42 U.S.C. § 405(g).

"'Substantial evidence' is 'more than a mere scintilla.  It means such relevant evidence

as a reasonable mind might accept as adequate to support a conclusion.'"  *Talavera*,

697 F.3d at 151, quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

The parties' dispute in this case centers on the second and fourth steps of the

sequential analysis.

## A.    Step Two

The ALJ found that Claimant had only one "medically determinable impairment"

that was severe, *i.e.*, degenerative disc disease, and then proceeded to Step Three.

Plaintiff argues that the ALJ erred in failing to provide an adequate explanation for not

finding Claimant's other impairments, *i.e.*, hypertension, diabetes mellitus, and coronary

---

[4] Counsel stated that he was doing so because that amended onset date was when Claimant "turned 50, at which point he'd be able to take advantage of the higher age category."  T. 32; *see* T. 188-189 (Plaintiff's Hearing Brief) ("As of his amended AOD [01/21/2009], [Claimant] was 50 years old: Closely Approaching Advanced Age.  The SSA should, therefore, award his Title II benefits upon determining that [Claimant] was limited to sedentary-duty work, and otherwise without transferable skills at that time.").

artery disease, severe, as the ALJ stated incorrectly that Claimant was diagnosed with these conditions "but . . . after the date last insured".[5]  T. 12.  Plaintiff further argues that even if these impairments were not severe, the ALJ was required to consider them in making his RFC determination and he failed to do so.

"At step two of the sequential evaluation process, the ALJ must determine whether the claimant has a severe impairment that significantly limits his or her physical or mental ability to do basic work activities."  *Henderson v. Comm'r of Soc. Sec.*, No. 18-cv-00072, 2019 WL 3237343, 2019 U.S. Dist. LEXIS 119834, *8 (W.D.N.Y. July 18, 2019), citing 20 C.F.R. §§ 404.1520(c), 416.920(c) (internal citation omitted).  It is the claimant's burden at Step Two to establish that he has a medically determinable impairment and that the impairment is severe.  *See Butts v. Barnhart*, 388 F.3d 377, 383 (2d Cir. 2004) ("The claimant bears the burden of proving his or her case at steps one through four . . .").

"[T]he standard for a finding of severity under Step Two of the sequential analysis is <u>de minimis</u> and is intended only to screen out the very weakest cases."  *McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014), citing *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995).  Courts in the Second Circuit have concluded that "'a finding of not severe should be made if the medical evidence establishes only a slight abnormality which would have no more than a minimal effect on an individual's ability to work.'"  *Henderson*, 2019 U.S. Dist. LEXIS 119834, at *9.  "[T]he mere presence of a disease or

---

[5] "The date last insured ('DLI') is a technical term used by the Commissioner to mark the last day on which a claimant is eligible for DIB and is calculated using the claimant's recent work history—broadly speaking, taxes paid into the Social Security system accrue as 'work credits' that provide quarters of insurance coverage under the program."  *Kathy R. v. Comm'r of Soc. Sec.*, No. 6:19-CV-385, 2020 WL 1862967, 2020 U.S. Dist. LEXIS 65026, *9 n.4 (N.D.N.Y. Apr. 14, 2020).

impairment, or establishing that a person has been diagnosed or treated for a disease or impairment is not, by itself, sufficient to render a condition severe." *Jennifer E. v. Comm'r of Soc. Sec.*, No. 1:19-CV-1122 (WBC), 2020 WL 6803037, 2020 U.S. Dist. LEXIS 216776, *7 (W.D.N.Y. Nov. 18, 2020) (internal quotation marks and citations omitted).  "If [ ] the disability claim rises above the de minimis level, then the analysis must proceed to step three." *Henderson*, 2019 U.S. Dist. LEXIS 119834, at *9 (internal quotation marks and citation omitted).

Contrary to the Commissioner's position, the ALJ did not determine whether Claimant's hypertension, diabetes mellitus, or coronary artery disease were severe under the regulations.  Rather, it appears that the ALJ did not reach that issue, finding instead that "[t]he claimant was diagnosed with hypertension, diabetes mellitus, and coronary artery disease, *but it was after the date last insured*."  T. 12 (emphasis added).

"Under Title II, a period of disability cannot begin after a worker's disability insured status has expired." *Woods v. Colvin*, 218 F. Supp. 3d 204, 207 (W.D.N.Y. Nov. 3, 2016), citing SSR 83-10, 1983 WL 31251, at *8, 1983 SSR LEXIS 30, *20 (Jan. 1, 1983).  In other words, "[i]t is well established that evidence of an impairment which reached disabling severity after the expiration of insured status, or which was exacerbated after such expiration, cannot be the basis for the determination of entitlement to a period of disability and disability insurance benefits, even though the impairment itself may have existed before the claimant's insured status expired." *Ewing v. Astrue*, No. 5:11-cv-01418, 2013 WL 1213129, 2013 U.S. Dist. LEXIS 40897, *10 (N.D.N.Y. Mar. 22, 2013), citing *Arnone v. Bowen*, 882 F.2d 34, 37-38 (2d Cir. 1989). Thus, declining to consider hypertension, diabetes mellitus, and coronary artery disease

at Step Two and thereafter was certainly proper if those conditions were, indeed, diagnosed after Claimant's date last insured.

Claimant's date last insured was June 30, 2012. *See* T. 10, 12. There is evidence that Claimant was diagnosed with hypertension and diabetes mellitus in 2005. *See* T. 654-655. Treatment of Claimant's hypertension and diabetes is recorded in the months leading up to the date last insured, with Claimant taking medications for his hypertension and diabetes and being counseled on weight loss and reducing his sodium intake. *See* T. 857-925 (February 2012-April 2012).

Although Defendant's diagnosis of coronary artery disease ("CAD") with severe aortic insufficiency was not made until 2014, T. 655, it is documented that Defendant had heart-related issues for years prior to his date last insured. He suffered an ischemic embolic stroke[6] in 2005. *See* T. 654-655. In 2007, Claimant was diagnosed with aortic regurgitation.[7] *See* T. 857. On June 26, 2012, just four days before the date last insured, claimant underwent a "transthoracic echo" that revealed a severe enlargement of Claimant's left atrium, mild tricuspid regurgitation, and several other heart-related insufficiencies/ dysfunctions. *See* T. 901.

---

[6] ". . . [an ischemic stroke] is the most common type of stroke. It happens when the brain's blood vessels become narrowed or blocked, causing severely reduced blood flow (ischemia). Blocked or narrowed blood vessels are caused by fatty deposits that build up in blood vessels or by blood clots or other debris that travel through your bloodstream and lodge in the blood vessels in your brain." Mayo Clinic, *Stroke: Symptoms & causes*, https://www.mayoclinic.org/diseases-conditions/stroke/symptoms-causes/syc-20350113 (last visited June 15, 2021).

[7] "Aortic valve regurgitation — or aortic regurgitation — is a condition that occurs when your heart's aortic valve doesn't close tightly. Aortic valve regurgitation allows some of the blood that was pumped out of your heart's main pumping chamber (left ventricle) to leak back into it. The leakage may prevent your heart from efficiently pumping blood to the rest of your body . . . Aortic valve regurgitation can develop suddenly or over decades. Once aortic valve regurgitation becomes severe, surgery is often required to repair or replace the aortic valve." Mayo Clinic, Aortic valve regurgitation: Symptoms & causes, https://www.mayoclinic.org/diseases-conditions/aortic-valve-regurgitation/symptoms-causes/syc-20353129 (last visited June 15, 2021).

6

Claimant's heart issue worsened after his date last insured.  He had heart stents put in, in July 2014, and aortic valve replacement surgery in June 2015.[8]  *See* T. 367, 423, 2378.  "[E]vidence of an applicant's condition subsequent to the expiration of [his] insured status is pertinent evidence in that it may disclose the severity and continuity of impairments existing before [the date of [his] insured status expires]."  *Mattison v. Astrue*, No. 07-CV-1042 (VEB), 2009 WL 3839398, 2009 U.S. Dist. LEXIS 106879, *17 (N.D.N.Y. Nov. 13, 2009).

In sum, the ALJ misstates when Claimant's hypertension and diabetes were diagnosed, and while alluding to Claimant's death, *see* T. 10, he did not discuss the death certificate or Claimant's causes of death, or assess Claimant's multiple heart issues that are extensively documented in the record.  Plaintiff argues, "Given Claimant passed away from these impairments rather than the ones the ALJ found severe, it is clear these impairments provided some limitations."  Dkt. No. 11, p. 5.  As the Commissioner points out, there is some evidence indicating that the conditions may *not* be severe, [9] but the Court will not resolve that issue on this record.

"[A]n ALJ's severity assessment with regard to a given impairment is harmless . . . when it is clear that the ALJ considered the claimant's [impairments] and their effect on

---

[8] This appears to have been a life-long issue.  At least one record indicates he was "born with a leaky valve".  T. 26.

[9] The Commissioner points to a June 9, 2016 case note by Claimant's vocational rehabilitation counselor, which states that Claimant "is treated for diabetes, high blood pressure and he had a leaky valve in his heart so he had an artificial valve put in and is now prescribed Warfarin.  For the diabetes he takes Metformin and Lantus.  *[Claimant] states he is not restricted in any way due to these disabilities.*"  T. 200 (emphasis added).  At the administrative hearing held before the ALJ on August 21, 2018, the ALJ asked Claimant's estate's counsel, "Can you please identify for me what are the severe medically determinable impairments in this case?"  Counsel responded, "Yeah.  Primarily, my client had a low back condition.  He fell and fractured his spine and that left him with impairments.  *That was the primary crux of his claim*, although later he succumbed to other systemic issues, including diabetes and other problems.  *But the opinion evidence largely focuses on the orthopedic problems.*"  T. 31-32 (emphases added).

7

his or her ability to work during the balance of the sequential evaluation process."
*Jennifer E.*, 2020 U.S. Dist. LEXIS 216776, at \*7-8 (internal quotation marks and citations omitted).  Here, however, "the ALJ did not mention or assess the severity of [Claimant]'s [hypertension, diabetes, or heart] conditions in the RFC analysis despite evidence that plaintiff . . . sought treatment for these conditions and [medical providers] diagnosed plaintiff with these conditions."  *Grant v. Comm'r of Soc. Sec.*, No. 16 Civ. 7604 (VSB)(HBP), 2017 WL 10651454, 2017 U.S. Dist. LEXIS 193903, \*37 (S.D.N.Y. Nov. 22, 2017), *adopted by Grant v. Berryhill*, No. 16-CV-7604 (VSB) (HBP), 2018 WL 5993730, 2018 U.S. Dist. LEXIS 195211 (S.D.N.Y. Nov. 15, 2018); *see Snyder v. Colvin*, No. 5:13-585, 2014 U.S. Dist. LEXIS 92541, \*15-16 n.12 (N.D.N.Y. May 21, 2014) ("It is important to note that the mere fact that sequential evaluation proceeds beyond Step 2, does not, *ipso facto*, render a Step 2 error harmless.  This harmless error construct is valid only when administrative law judges faithfully execute their responsibilities to consider *functional effects* of all impairments in subsequent steps.") (emphasis in original), *adopted by* No. 5:13-cv-585 (GLS/ESH), 2014 WL 3107962, 2014 U.S. Dist. LEXIS 92052 (N.D.N.Y. July 8, 2014); *Trombley v. Berryhill*, No. 1:17-cv-00131-MAT, 2019 WL 1198354, 2019 U.S. Dist. LEXIS 41978, \*15 (W.D.N.Y. Mar. 14, 2019) ("Here, . . . the Court cannot say that the error is harmless because it is not clear from the ALJ's decision that he considered any of the functional effects of Plaintiff's coronary artery disease at subsequent steps of the sequential evaluation.").

With respect to the import of the death certificate and Claimant's causes of death, Claimant died on September 14, 2017—5 years and 2 ½ months after the date last insured.  It is therefore questionable whether the medical conditions listed in the

death certificate resulted in limitations during the insured period.  *See Hanley v. Berryhill*, No. 2:17-cv-00013, 2018 U.S. Dist. LEXIS 54683, *44 (D. Vt. Mar. 29, 2018) ("The Commissioner is correct that the death certificate, by itself, does not show that the liver failure, cirrhosis, and alcoholism were disabling at the time of ALJ Menard's decision.").  This is a question that the ALJ shall explore on remand, however, as he is required to consider the entire record.  "As the ALJ did not address this evidence, [the Court] think[s] it best to remand the case so that he can consider in the first instance what weight to accord it."  *Quinones v. Chater*, 117 F.3d 29, 36 (2d Cir. 1997); *see Clute ex rel. McGuire v. Comm'r of Soc. Sec.*, No. 18-CV-30-FPG, 2018 WL 6715361, 2018 U.S. Dist. LEXIS 215156, *7-8 (W.D.N.Y. Dec. 21, 2018) (noting that the Appeals Council remanded the ALJ's decision finding that the claimant had no severe impairments, "in light of [the claimant]'s death due to cardiovascular issues approximately five months after the ALJ rendered his decision"); *Hanley*, 2018 U.S. Dist. LEXIS 54683, at *42-45 (remanding the case when the claimant's death certificate was issued less than a month after the ALJ's decision, and the listed cause of death was "material to several findings critical to [the] ALJ[ ]'s ultimate determination that she was not disabled").

Even if the ALJ on remand determines that these medical issues were not severe impairments, the ALJ must still consider them in his analysis of Claimant's RFC.

## B.    Plaintiff's remaining challenges to the ALJ's decision

Plaintiff's remaining arguments concerning the ALJ's physical RFC finding and analysis at Step Four need not be considered at this time because further development of the record on remand may affect those determinations.  *See e.g. Davis v. Berryhill*,

No. 6:16-CV-06815 (MAT), 2018 WL 1250019, 2018 U.S. Dist. LEXIS 39605, *10, (W.D.N.Y. Mar. 9, 2018); *Brink v. Colvin*, No. 1:14-CV-00940 (MAT), 2017 WL 2531711, 2017 U.S. Dist. LEXIS 89909, *8 (W.D.N.Y. June 12, 2017).

Upon remand, the ALJ shall properly consider all the evidence of record; formulate a new Step Two severity determination, including whether Claimant's hypertension, diabetes mellitus, and coronary artery disease are severe; consider both severe and non-severe impairments when formulating Claimant's RFC; weigh the significance, if any, of Claimant's death certificate; and further develop the record if it is deemed incomplete.

## CONCLUSION

Is hereby ORDERED that pursuant to 28 U.S.C. § 636(b)(1) and for the reasons set forth above, Plaintiff's motion (Dkt. Nos. 8, 9) for judgment on the pleadings is GRANTED, the Commissioner's motion (Dkt. No. 10) for similar relief is DENIED, and the Commissioner's final decision is VACATED and the case REMANDED for further administrative proceedings consistent with this Decision and Order.

The Clerk of the Court shall take all steps necessary to close the case.

**IT IS SO ORDERED.**

 *s/Richard J. Arcara*
HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT COURT

Dated:  June 15, 2021
           Buffalo, New York